[Civ. No. 5404. Fourth Dist. Aug. 31, 1956.]

JOHN G. CARDOSA et al., Appellants, v. FIREMAN'S FUND INSURANCE COMPANY (a Corporation) et al., Respondents.

John Gerald Driscoll, Jr., for Appellants.

McCutchen, Black, Harnagel & Greene, Harold A. Black and Philip K. Verleger for Respondents.

MUSSELL, J.—This is an action on an insurance policy to recover the sum of $5,376.20 paid by plaintiffs to the government of Ecuador as a fine or penalty for the violation of a law of that republic prohibiting the passage of fishing boats through its territorial waters without a permit so to do.

The policy, issued April 11, 1951, insures plaintiffs as owners of the "Notre Dame," a fishing vessel, against:

"(9). Liability for fines and penalties for the violation of any of the laws of the United States, or of any State thereof, or of any foreign country; provided, however, that the Company shall not be liable to indemnify the Assured against

any such fines or penalties resulting directly or indirectly from the failure, neglect, or default of the Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of any such laws.''

The policy further provides that notwithstanding anything to the contrary contained therein, no liability attaches to the company directly or indirectly ''for or in respect of any loss, damage or expense sustained by reason of capture, seizure, arrest, restraint or detainment or the consequences thereof or any attempt thereat. . . .'' It is also provided therein that ''no action shall lie against the company for the recovery of any loss sustained by the assured unless such action is brought against the company within one year after the final judgment or decree is entered in the litigation against the assured, or in case the claim against the company accrues without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim,'' and ''The company shall not be liable for any claim not presented to the Fireman's Fund Insurance Company, Head Office, with proper proofs of loss within six (6) months after payment thereof by the assured.''

On November 5, 1951, the ''Notre Dame,'' in charge of plaintiff John G. Cardosa, was proceeding from Panama to fishing banks off the coast of Peru, when it was stopped by a patrol boat of the Ecuadorian government at a point approximately five miles outside of Isla de la Plata (an island off the coast of Ecuador). An armed guard was placed on board the Notre Dame and she was escorted to the Port of Manta, Ecuador. On November 15, 1951, a fine of $5,376.20 was imposed by the Ecuadorian government under a law of that republic which forbade the entry of foreign fishing vessels into Ecuadorian waters, defined as waters including an area within 12 nautical miles measured from the line of the lowest tide at the most projecting points of the Ecuadorian coast. On November 20, 1951, plaintiffs paid the fine to obtain the release of the vessel. They were unable to secure remission of the fine which was paid by them under protest and thereafter this action was filed to recover the amount so paid from the defendant insurance company. Trial was had by the court without a jury and judgment was entered in favor of the defendant. Plaintiffs appeal from the judgment.

One of the affirmative defenses pleaded by the defendant in its answer is that the instant action was not commenced within the one year time limit provided in one of the provisions of

the policy hereinbefore set forth. Appellant claims that the defendant waived this provision of the policy and that the only question presented on this appeal is whether the trial court was justified in concluding that the defendant was free to assert the defense that the action was not filed within one year from the date of the payment of the fine. The record shows in this connection that in December, 1951, or January, 1952, plaintiff John G. Cardosa orally informed one John Rastello, defendant's insurance agent in San Diego, of the facts concerning the seizure of the vessel and the payment of the fine and asked him if there was any possible chance to collect the fine through the insurance. Rastello said he did not know but would find out and let Cardosa know. Rastello told Mr. Cardosa that he would ask Mr. Roberts, the attorney for the Fireman's Fund, and accordingly, he called Mr. Roberts on the 'phone either the last week in December, 1951, or during the first two weeks of January, 1952. Roberts informed Rastello that there was no claim under the policy and in the early part of February, 1952, Roberts told Cardosa that he was sorry "but it just isn't a claim under the policy." On or about April 15, 1953, Cardosa asked Roberts about a claim and told him that he had just heard that the fishing boat "Ecuator" had been reimbursed for a fine paid under a similar seizure. Roberts then stated that he would find out about it and he promptly discussed the matter with the manager of the Tuna Boat Association. Thereafter Rastello forwarded certain claim papers to Roberts. During the first week in February, 1954, Rastello went to San Francisco and there conferred with officials of the Fireman's Fund, who told him that they were denying the claim. Rastello then advised Cardosa that the company had denied his claim.

Plaintiff John G. Cardosa testified that in January, 1952, Rastello told him that he didn't have a chance to collect the money from the insurance; that he trusted Rastello and didn't do anything until he heard that another boat had collected insurance as a result of a similar occurrence; that he then told Rastello about it and Rastello told him not to go and see an attorney until he "let him know—that he couldn't do anything about it"; that he would go to San Francisco and see what he could do about the fine; that during the month of February, 1954, Rastello told him that the company would not honor his claim.

The court found, among other things, that plaintiffs were

advised by Rastello that the company denied liability for plaintiffs' loss, stating that said fine or penalty was not a loss, damage or expense recoverable under the terms of said policy since it was sustained by reason of the capture, seizure or arrest of the vessel and that there was then ample time for plaintiffs to obtain independent advice before the expiration of the time pursuant to the policy, but that plaintiffs did not obtain such advice; that in April, 1953, plaintiff again made claim against the defendant through said John Rastello for the payment of said fine. That defendant then informed plaintiff through said John Rastello that if plaintiff would again submit its claim, the defendant would make a decision thereon. That said claim was thereupon again submitted to defendant and no decision was made thereon until February, 1954, when the defendant again denied liability on said claim. The court further found that the following allegations of the complaint were not true: ''That the failure of plaintiffs to institute this action within the period prescribed by the terms of the policy was due to no fault of these plaintiffs but was due to the action of the defendant in representing to these plaintiffs that the loss sustained by them was not covered by said policy; that by reason of the facts hereinabove alleged said defendant is now estopped to assert that this action is barred because not instituted within one year from the date of the payment of said fine.'' These findings are supported by substantial evidence. ■ The rule is that ''If the complaint alone, or with the proposed amendments, pleaded an estoppel, the question as to whether such estoppel exists is a question which should be left to the trier of fact to be determined as a question of fact, and not determined as a question of law.'' (*Cruise* v. *City & County of San Francisco*, 101 Cal.App.2d 558, 562 [225 P.2d 988].) In *Hopson* v. *National Union etc. Cooks & Stewards*, 116 Cal.App.2d 320, 324, 325 [253 P.2d 733], the court said:

''A waiver is defined in *Bastanchury* v. *Times-Mirror Co.*, 68 Cal.App.2d 217, 240 [156 P.2d 488] as 'the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive.' '' . . . 'To make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts, amounting to an estoppel on his part.' (*Stewart* v. *Leasure*, 12 Cal.2d 652 [55 P.2d 917].)

Waiver is ordinarily a question of fact. (*Lyons* v. *Brunswick-Balke etc. Co.*, 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173].)''

In the instant case, in January, 1952, Cardosa asked Rastello if there was a chance to collect the fine from the insurance company and Rastello, in February, 1952, informed Cardosa that there was no claim under the policy. Cardosa then knew that the defendant insurance company denied liability on the policy. He did nothing further until on or about April 15, 1953, more than one year after he had paid the fine to release the vessel, when he again approached Rastello and told him that he had just heard that the ''Ecuator'' had been reimbursed for a fine paid under a similar seizure. Rastello said he would find out about it, contacted the company officials, and was informed by them that they had denied the claim. In April, 1954, Rastello conveyed this information to Cardosa. There is nothing in the record to indicate that the defendant company admitted liability under the policy at any time or that its agents promised to pay the claim. If, as plaintiff Cardosa testified, Rastello, in the middle part of 1953, told him not to see an attorney until he, Rastello, found out that he couldn't do anything about it, such a statement did not prejudice the rights of the plaintiffs, as the time within which an action on the policy could be commenced had already expired. Rastello, as agent for the defendant company, clearly stated to plaintiff John Cardosa in February, 1952, that he, Cardosa, did not have a claim under the policy. The defendant, concealing no fact from the plaintiffs, was free to take this position and plaintiffs were then free to litigate the issue of liability which the defendant had denied.

In *Neff* v. *New York Life Ins. Co.*, 30 Cal.2d 165, 172-173 [180 P.2d 900, 171 A.L.R. 563], the court said:

''It is a matter of common knowledge that there are often differences of opinion concerning liability under insurance policies and no mere denial of liability, even though it be alleged to have been made through fraud or mistake, should be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations.''

The finding of the trial court that the defendant insurance company was not estopped to assert that the action was barred because it was not instituted within one year from the date of the payment of the fine is supported by the evidence

and since it is conceded that the action was not commenced within the time prescribed in the policy, the judgment for the defendants on that ground was proper.

In view of our conclusion in this connection, it is unnecessary to here pass upon the remaining issues stated by the appellant.

The judgment is affirmed.

Barnard, P. J., and Burch, J. pro tem.,* concurred.

A petition for a rehearing was denied September 19, 1956. Griffin, Acting P. J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied October 24, 1956. Carter, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.