[Civ. No. 9346.   Third Dist.   Oct. 15, 1958.]

FRITZ TOEDTER et al., Appellants, v. JOHN H. BRAD-
SHAW, Individually and as Executor and Trustee, etc.,
Respondent.

Ernest J. Hill and Orville C. Pratt IV, for Appellants.

Geis & Byrd, Bruce H. Thomas, David F. Geis and Carroll F. Byrd for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment refusing to set aside a decree of distribution, or, in the alternative, to impress a trust on property distributed to respondent pursuant to the decree.

John Bellman died testate on August 8, 1941. By his will, executed on April 13, 1939, he left the residue of his estate in trust for certain collateral relatives living in Germany. He nominated respondent John H. Bradshaw to be the executor of his will and he also named him as trustee of the trust therein created. Bradshaw was granted letters testamentary. The estate remained in probate until April 17, 1953. In the meantime, decrees of partial distribution had distributed all but the residue. On April 17, 1953, the residue of the estate was ordered distributed to Bradshaw individually. The court determined that pursuant to certain conditions expressed in the trust provisions the interest of all the beneficiaries had ceased.

After making various specific bequests, Bellman provided in the Fifth Paragraph of his will as follows:

"All of the rest, residue and remainder of my property wherever the same may be situate, I give, devise and bequeath to JOHNIE HERMAN BRADSHAW, in trust and as trustee, subject to the following terms and conditions:

"It is my will that the said remainder of my estate is to be divided as follows:

"To my nephew, FRITZ TOEDTER, who resides in Wesseloh, Schneverdingen, Hanover, Germany, the sum of Four Thousand Dollars ($4,000.00);

"To my sister, MARY BEHRENS, who resides in Fintel, Hanover, Germany, the sum of Four Thousand Dollars ($4,000.00);

"The residue of my estate shall be divided equally among the following nephews and nieces, to-wit, OTTO BELLMAN, HERMAN BEHRENS, MARIE MIMI BEHRENS HEINE, WILHELM TOEDTER, CHRISTOPHER TOEDTER, and to the living children of my niece, DORA, whose last name I do not now recall, but who is a daughter of my brother, CHRISTOPHER BELLMAN and the half-sister of my nephew, OTTO BELLMAN, share and share alike."

By the Ninth Paragraph of his will Bellman declared as follows:

"During the existence of the trusts herein created, I direct my said trustee to pay to each of said beneficiaries either a monthly, quarterly or annual payment from the corpus, interest, accumulations or accretions thereof, which said sum shall be in the discretion of my said trustee, provided further, that in the event a beneficiary resides in any country engaged in a war with the United States of America, or in a country

in which diplomatic relations between the United States of America and said country have been suspended or severed, that my said trustee shall retain and hold the portion of the trust to which said beneficiary is entitled so long as said beneficiary remains a resident of the country engaged in a war with the United States of America, or in which diplomatic relations between the United States of America and said country have been suspended or severed. In the event my said trustee retains and holds any portion of any trust herein created by reason of the conditions above referred to, and said condition or conditions remain for a period of ten (10) years after my death, I direct my trustee to deliver any part or portion of said trusts, so held and retained for ten (10) years from and after my death, to the other beneficiaries not affected by said condition or conditions. In the event that no part or portion of said trusts can be distributed by reason of the aforesaid condition or conditions to any of said beneficiaries, then said trusts, or any part or portion thereof, shall be distributed to JOHNIE HERMAN BRADSHAW at the termination of ten (10) years from my death.''

The decree of distribution was made pursuant to petition of Bradshaw, wherein he made the following allegations: Under the terms of the will of Bellman the residue of the estate was given to petitioner in trust for the purpose of distributing the same to certain beneficiaries therein named and in the manner therein provided. All of the beneficiaries therein named were residents and nationals of the country of Germany. Within a period of less than six months after the death of the above named decedent and before any distribution could be made to any of the said beneficiaries under said trust, the United States of America and the country of Germany became engaged in a war and severed diplomatic relations. The state of war did not finally cease and terminate and diplomatic relations were not resumed between the said countries until more than ten years had elapsed from and after the death of said decedent. By reason of said war and severance of diplomatic relations petitioner had been unable to deliver any part or portion of the residue of said estate to the beneficiaries of said testamentary trust within the ten-year period from and after the death of said decedent. Under the last will and testament of decedent petitioner was entitled to have said residue of said estate distributed to himself free of any trust.

The probate court found in the decree of distribution that by reason of the state of war and the severance of diplomatic relations the trustee had been unable to deliver any portion of the residue of the estate to the beneficiaries of said testamentary trust within the 10-year period from and after the death of Bellman, and concluded that under the terms of the will Bradshaw was entitled to the whole of the residue. The probate court thereupon decreed that the said residue of the estate be so distributed to Bradshaw as sole distributee.

In this action the trial court made the following findings of fact: That at all times during the probate proceedings and up to and including the making of the decree of distribution Bradshaw had known the address of Fritz Toedter in Germany, but that he did not know the address of any of the other beneficiaries; that Bradshaw had not fraudulently or otherwise concealed from the beneficiaries, or any of them, or from the court any facts or matters concerning the estate of Bellman, and that Bradshaw had not made any fraudulent representations to the beneficiaries or to the court; that the beneficiaries had not relied upon Bradshaw to fulfill his obligations as executor and trustee and to deliver to them any part or portion of the trust estate; that the beneficiaries had not been in anywise damaged by the entry of the decree of distribution; that the reason no distribution had been made to Bradshaw as trustee during probate was because doing so would have resulted in an order by the federal alien property custodian vesting the title to all the trust property in the United States; that Bradshaw had not failed to give notice to the beneficiaries of the petition for distribution which he had filed (the evidence shows without conflict that the only notice given was the 10-day statutory notice by posting); that Bradshaw had not intended to prevent the appearance of the beneficiaries when his petition was heard; that Bradshaw had not concealed from the court any matter of notice to the beneficiaries of the hearing of that petition, and that he had not caused the court to act upon his petition without opportunity accorded to the beneficiaries to be heard thereon; that it was untrue that the beneficiaries had been unaware of the petition filed by Bradshaw or of the proceedings taken relative thereto (there is no evidence that they in fact knew of the distribution proceeding); that Bradshaw had not prevented or deterred the beneficiaries from appearing or from being heard at any stage of the proceedings in the matter of the estate; that none of the beneficiaries had been damaged

by any act or omission of Bradshaw; that they had not been lulled into any sense of security by any act or omission of Bradshaw; that the beneficiaries had never filed any request for special notice of estate proceedings; that any loss or detriment which they or any of them may have sustained was the result of their inattention to their interests and not the result of any act or omission of Bradshaw; that the beneficiaries and each of them, for some years before the final distribution decree was made, had actual knowledge of the pendency of the probate proceedings; that during the months of July and September, 1950, Bradshaw had caused the beneficiaries to be notified of the provisions of sections 259 and 259.1 of the Probate Code, and caused them to be advised that it was necessary and desirable that they be represented by a local California attorney in the final distribution of the estate, and that by reason of the aforesaid matters the beneficiaries were now estopped to assert that they were not present or heard in said matter by reason of any act or omission of Bradshaw or that they, or any of them, had suffered any loss or detriment by reason of any such act or omission; that on or about the 22d day of August, 1951, which date it may be noted, is more than 10 years after the death of Bellman, a firm of attorneys in New York had caused an attorney practicing in the county of Glenn to inquire into the status of the estate of said decedent and that the attorney had done so and had rendered an opinion to said New York attorneys in that regard; that the decree of distribution had been made and entered on April 17, 1953, and had become final and was binding and conclusive as to the rights of the parties to this action in and to the residue of the estate distributed by the decree; that at all times during the probate of the estate the alien property custodian for the United States of America declared to Bradshaw's attorneys of record in said estate that, if he attempted to distribute any part of the residue of the estate of Bellman to the beneficiaries or any of them, or to any trustee for them, the custodian would forthwith issue a vesting order declaring such property vested in the United States. As conclusions of law from the foregoing findings, the court concluded the decree of distribution was final, binding and conclusive of the rights of the parties to this action; that the beneficiaries were entitled to take nothing by this action from Bradshaw and that Bradshaw was entitled to judgment against them

for his costs. Judgment to that effect was thereafter entered and this appeal followed.

It is necessary to construe the Bellman will and under this record this court is not bound by the construction placed thereon by the trial court but is to construe it as a matter of law. ■ As stated in *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825] :

An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence . . . Under these circumstances, there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law.''

By the testator's will the residue of his estate was bequeathed in trust to Bradshaw for the benefit of his relatives residing in Germany. Their interests vested on his death. Under certain conditions set forth in the will the interests of any one or more of them might be divested and pass to the others, or the interests of all might be divested. If that occurred then and only then the trustee could claim and hold the property as his own. The retention provisions imposed by the testator upon the action of the trustee with respect to distribution of the trust res indicate that the testator contemplated only the normal period of probate during which period the trustee could not, of course, distribute something he had not yet received. When the trustee received the trust property he was by the terms of the will under a duty to begin distribution. The time and amount of partial distributions were left to his absolute discretion. Nevertheless, it was his duty to distribute. He had no other duty with respect to the trust res except its safekeeping. But when he received it and was able to distribute, the will commanded that he retain and make no distribution of the interest of any beneficiary residing in the proscribed territory. However, the retention provisions expired 10 years after the testator's death, at which time the trustee was to distribute to anyone entitled to take, that is, anyone not affected by the retention provisions. If there were none such, then all interest of any beneficiary whose share had been so retained ceased and the trustee owned the same free from the trust.

■ Turning now to the retention provisions we find there were two. The distributive share of any beneficiary was to be retained if he was residing in a country ''engaged in a war with the United States of America.'' Likewise, there should

be retained the share of any beneficiary residing in a country not maintaining diplomatic relations with the United States. While the trial court found that at all times during the 10 years after the testator's death all of the German relatives of the testator had been residing in a country engaged in war with the United States and that the same country also, during the same period, was not maintaining diplomatic relations with the United States, these findings cannot stand against historical fact of which this court takes judicial notice. It is a historical fact that diplomatic relations were resumed between Germany and the United States on July 2, 1951, when the first German diplomat was accredited to the United States. This condition for retention therefore ceased within the 10-year period following the testator's death. ■ As to the retention condition concerning residents in a country "engaged in a war" with the United States, we think the reasonable interpretation of that language is that the described period ended with the practical cessation of hostilities. It is historical fact that about May 8, 1945, or shortly thereafter, the German armies surrendered and Germany was wholly occupied by the allied forces. Germany could no longer be said to be "engaged in a war" with the United States. The very word "engaged" connotes action. Thus Webster's International Dictionary defines the word "engaged" as a state of being involved, "especially, involved in a hostile encounter; as, the engaged ships continued the fight." We hold that within the common and reasonable meaning of the phrase "engaged in a war," Germany, after the surrender of her armies and the occupation of her territory by the allied forces, was no longer engaged in war with the United States. The result of the foregoing is that the conditions which could divest the interest of the German beneficiaries and vest those interests in Bradshaw ceased to exist within the 10-year period after the testator's death. (See *Peters* v. *McKay,* 195 Ore. 412 [238 P.2d 225, 246 P.2d 585] ; *Kaiser* v. *Hopkins,* 6 Cal.2d 537, 539 [58 P.2d 1278] ; *Hoover* v. *Sandifur,* 25 Wn.2d 791 [171 P.2d 1009, 168 A.L.R. 170].)

The situation respecting the alien property custodian and his power to vest and his threats to vest the interests of the German nationals, which situation is heavily stressed in respondent's brief, has nothing to do with the question of title. The existence of a power to vest was not mentioned in the will. It may have been good judgment on the part of Bradshaw to keep the estate proceedings open, as he did, for ap-

proximately 12 years, but he could only obtain title to the property as to which he was trustee under the conditions specified in the testator's will.

When Bradshaw, as executor, filed his petition for distribution and therein for the first time made a claim that he owned individually and was entitled to distribution of the trust res, he was bound to act in respect to the beneficiaries of the trust by those rules which govern the action of trustees. ▮ One who is a trustee cannot purchase or deal with the subject of the trust nor place himself in an attitude antagonistic to the trust. ▮ It is against public policy to permit persons occupying fiduciary relations to be placed in such a position that the influence of selfish motives may be a temptation so great as to overpower their duty and lead to a betrayal of their trust. ▮ This rule is unyielding and a trustee may not, under any circumstances, be allowed to have any dealings in the trust property with himself or acquire any interest therein. Courts will not permit an investigation into the fairness or unfairness of such a transaction or allow the trustee to show that the dealing was for the best interest of the beneficiaries. ▮ It is a trustee's duty in all things to first consider and always to act for the best interests of the trust. (*Estate of Howard*, 133 Cal.App.2d 535, 540-541 [284 P.2d 966].) ▮ Much more might be said concerning the strict supervision of trustees by courts, but the underlying policy is so well known that extended citation of authorities is unnecessary. The findings of the court that the German nationals did not rely upon the good faith of their trustee are of no avail to respondent. Under the law they had a right to so rely and in the absence of direct evidence that they knew that he had turned against them it must be assumed that they did so rely. There is no such evidence in this record. Unavailing also to respondent are the court's findings as to communications to the German nationals respecting their rights to inherit under the sections of the Probate Code referred to, for their right to inherit was a matter entirely apart from Bradshaw's claims that their inheritances had been divested by the conditions in the will. Neither does it avail respondent that they consulted attorneys concerning the status of their interest and may have been informed, or, as we hold, misinformed by those attorneys as to that status. The plain fact is that respondent was a trustee for their benefit at all times with which we are here concerned, that he gave them no warning that he intended to take their property as his

own through the medium of a court decree, and that he gave them no actual notice of his attack upon them. By such conduct he violated his plain duties as trustee. The posted notice that was given was that of the executor.· The decree followed in the space of 10 days. It does not aid respondent to argue, as he does and as the court found, that the German nationals could have demanded, but did not demand, special notice. Their failure to do so lessened not at all respondent's duty as trustee. Under the circumstances existing and as soon as respondent determined to take for himself the trust res it was his duty to surrender up his trusteeship upon notice to the beneficiaries according to them ample opportunity to seek a successor or other representation and then to present his claims to a court of competent jurisdiction in an adversary proceeding.

It does not help respondent that the trial court here found that he had not misrepresented anything to the probate court or that that court (since it had the will before it) knew of the pertinent provisions with respect to the trust estate and the title to it. The vice of his conduct is that he succeeded in obtaining a judgment upon which he now relies through a proceeding had in the absence of those whose interest he was attacking and under conditions whereby he knew that they would not be represented, as in fact they were not. It makes no difference that the court found that he acted in good faith. Under such circumstances he must be held to have acted in bad faith. The situation is comparable to that where a trustee deals with the property of his trust. In such situations it is to be said as the court said in *Pacific Vinegar, etc., Works,* v. *Smith,* 145 Cal. 352, 365 [78 P. 550, 104 Am.St.Rep. 442] :

". . . The great purpose of the law is to secure fidelity in the agent. When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self-interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be overcome; and duty is sacrificed to interest. In order that this temptation may be avoided, or, if indulged in, must be at the peril of the trustee, it has been wisely provided that the trustee shall not be permitted to make or enforce any contract arising between himself as trustee and individually with refer-

ence to any matter of trust, nor will the court enter into any examination of the honesty of the transaction."

There appears to be no good reason why the interests of the appellants cannot be sufficiently secured to them by a reversal of the judgment appealed from with directions to the trial court to enter a judgment declaring that respondent took the property distributed to him under the trusts declared in the testator's will and that he is accountable to them as trustee for that property and the proceeds thereof. It is so ordered.

Peek, J., and Schottky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 10, 1958.