[No. D009984. Fourth Dist., Div. One. June 28, 1990.]

DENIS LOVE et al., Plaintiffs and Appellants, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

COUNSEL

William J. Brown III for Plaintiffs and Appellants.

Kenneth N. Greenfield, Horvitz & Levy, Barry R. Levy and Mitchell C. Tilner for Defendant and Respondent.

OPINION

**FROEHLICH, J.**—Appellants Denis Love and Sharon Love appeal from a judgment in favor of Fire Insurance Exchange (FIE) following the granting of FIE's motion for summary judgment based on the statute of limitations. The Loves contend (1) FIE's conduct estops it from relying on the statute of limitations; (2) they have independent causes of action for bad faith which are not time-barred; and (3) the numerous triable issues of fact preclude entry of summary judgment.

1. *Factual Background*

The Loves have resided in their home since 1969. They had insured the home through FIE at all relevant times. In late 1980 Mr. Love discovered cracks in the foundation and filling of the home, "strange" cracks in the ground adjacent to the home, separations, sticking doors and a broken framing member in and around the home. On February 3, 1981, the Loves hired a geotechnical engineering firm to inspect the home. The geotechnical engineering firm conducted the inspection and thereafter advised the Loves the damage was related to earth movement and the negligence of the home builders. The firm further advised the Loves the cracked slab was caused by expansion and contraction of the soils beneath the home.

Also in February of 1981 Mr. Love telephoned his insurance agent, Oliver Crocker, and made a claim for the damages described above. Crocker, FIE's agent and representative, denied the claim indicating there was no coverage under the Loves' policy because the claimed damages were an "act of god." The Loves took no further steps to pursue the denied claim.

In December of 1985 Mr. Love was told by an acquaintance the damage to his home (which had worsened over time) was common to homes in the

area and that other insurance companies had compensated other owners for similar damages. On December 30, 1985, Mr. Love again contacted Crocker to resubmit his claim for the above described damages. By a letter dated January 21, 1986, FIE acknowledged receipt of the renewed claim and informed the Loves it would undertake an investigation of their claim, without waiver of any defenses then available to FIE. The Loves acknowledged receipt of the letter, understanding that FIE was not waiving any of its rights. After conducting an investigation, FIE denied the Loves' claim on May 29, 1987.

On January 21, 1988, the Loves filed an action against FIE alleging, among others, causes of action for breach of the covenant of good faith and fair dealing, breach of statutory duties, breach of contract, fraud and intentional infliction of emotional distress.[1] FIE subsequently moved for summary judgment on the grounds the claims were time-barred by both the policy provisions[2] and governing statutes of limitations. The court concluded the action was barred by the statutory limitation periods and granted FIE's motion. Following entry of judgment, this appeal was undertaken.

### 2. *Standard of Review*

The purposes and standards for summary judgment are well established. ■ "The purpose of the summary procedure is to penetrate through evasive language and adept pleading and ascertain the existence or absence of triable issues. [Citations.]" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) The trial judge determines whether triable issues exist by examining the affidavits and evidence before him, including any reasonable inferences which may be drawn from the facts before him. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].) While " . . . the affidavits of the moving party are to be strictly construed and those of the opponent liberally construed . . . [citation], . . . a party opposing a motion for summary judgment which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist." (*Chern* v. *Bank of America, supra,* 15 Cal.3d at p. 873.)

■ Where the operative facts are undisputed, the question of the application of the statute of limitations is a matter of law (*Wells Fargo Bank* v.

---

[1] The complaint also alleged causes of action for intentional and negligent interference with prospective economic advantage. However, these claims were against defendants other than FIE.

[2] The policies of insurance contained contractual provisions mandating that any suit on the policy be filed within one year after the loss.

*Superior Court* (1977) 74 Cal.App.3d 890, 895 [141 Cal.Rptr. 836]), and summary judgment is proper where the facts show the action is time-barred as a matter of law (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923]). ██ We conclude the trial court correctly determined there were no triable issues of material fact and the claims were barred by the statute of limitations.[3]

### 3. *Loves' Causes of Action Are Barred by the Statute of Limitations*

 All of the Loves' claims for payments due under the policy (and their causes of action based on wrongful denial of said claims) accrued in 1981, when they were notified by their geotechnical firm the home was suffering damages from subsidence problems caused by third party negligence in constructing the home. Where an insured observes abnormal damage, hires an engineering firm to investigate, and obtains a report stating earth movement and third party negligence are causes of the damage, his causes of action against the insurer accrue on receipt of such report (*Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565, 571-573 [251 Cal.Rptr. 319]), because the statute of limitations commences when a party knows or should know the *facts* essential to his claim (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 897-898 [218 Cal.Rptr. 313, 705 P.2d 886]).

An insured who is aware of the essential facts cannot toll the statute of limitations by contending he only belatedly discovered his policy might provide coverage (*Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 535-536 [252 Cal.Rptr. 565]), because knowledge of the *facts*, rather than knowledge of the available legal theories or remedies, starts the statute of limitations (*Gutierrez* v. *Mofid, supra*, 39 Cal.3d at p. 898). Accordingly, the Loves' causes of action accrued not later than February of 1981, because Loves were aware of the factual predicate to their suit and were aware their claim had been unconditionally denied. (Cf. *State Farm Fire & Casualty Co.* v. *Superior Court* (1989) 210 Cal.App.3d 604 [258 Cal.Rptr. 413] [knowledge of facts and unconditional denial of claim start statute of limitations].)

The Loves' complaint was filed in January of 1988, almost seven years after their claims were alleged to be wrongfully denied. ██ 

---

[3] Love asserts estoppel is always a question of fact which precludes summary judgment. We disagree. (See, e.g., *Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165 [180 P.2d 900, 171 A.L.R. 563] [where facts undisputed, trial court may summarily grant judgment in favor of defendant on statute of limitations grounds despite estoppel claim].)

■ Although the different causes of action carry different periods of limitation,[4] all periods expired well before the complaint was filed.

### 4. *FIE's Conduct Does Not Estop It From Relying on the Statute of Limitations Defenses*

■ The Loves seek to avoid the time bar by arguing FIE is estopped to assert the statute of limitations. The Loves contend because FIE stood in a fiduciary relationship with them, it had an obligation to disclose that where third party negligence was a proximate cause of the injury, an otherwise excluded loss was a covered loss. FIE denied the 1981 claim without disclosing this alternative legal theory of coverage. Instead, the Loves argue, FIE fraudulently concealed such legal theory. They urge such fraudulent concealment and failure to disclose should operate to estop FIE from relying on the statute of limitations. We reject their argument for several reasons.

First, we are unaware of any authority holding that an insurer is estopped to plead the statute of limitations merely because when it denied a claim it failed to inform its insured of pertinent laws or legal theories upon which the insured could rely in a later lawsuit challenging denial of the claim. To the contrary, on facts similar to the instant case, our Supreme Court in *Neff* v. *New York Life Ins. Co., supra*, 30 Cal.2d 165, concluded an insurer's denial of a claim started the statute of limitations running. In *Neff* an

---

[4] The Loves' breach of the written contract count is subject to a four-year limitation (Code Civ. Proc., § 337, subd. 1), as is their claim for breach of the covenant of good faith and fair dealing insofar as it rests on the implied contractual promise. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 662-663 [328 P.2d 198, 68 A.L.R.2d 883].) These obligations were breached on wrongful denial of the claim in 1981, and are time-barred. To the extent the Loves seek tort remedies on their claim for breach of the covenant of good faith and fair dealing, the claim is governed under and is barred by the two-year statute of limitations under Code of Civil Procedure section 339, subdivision 1. (*Richardson* v. *Allstate Ins. Co.* (1981) 117 Cal.App.3d 8, 12-13 [tort cause of action for breach of implied covenant of good faith governed by Code Civ. Proc., § 339, subd. 1].) The Loves' "fraud" claim (assuming it is somehow distinct or independent from their bad faith counts) is governed under and is barred by the three-year limitation period under Code of Civil Procedure section 338, subdivision (d), since the Loves knew the *facts* (albeit not the legal theory) upon which the fraud was premised. Finally, the Loves' "intentional infliction of emotional distress" claim, again assuming it is somehow distinct or independent from their bad faith count (but see *Richardson* v. *Allstate Ins. Co., supra*, 117 Cal.App.3d at pp. 12-14), is barred by the one-year limitations period under Code of Civil Procedure section 340, subdivision (3) applicable to such claims. (*Purcell* v. *Colonial Ins. Co.* (1971) 20 Cal.App.3d 807, 809, 814-815 [97 Cal.Rptr. 874].)

Although the Loves also purported to plead a cause of action for "breach of statutory duties," alleging violations of Insurance Code section 790.03, it is now settled there is not per se such a private cause of action. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58].)

insured, possessing both the operative *facts* upon which his claim was based and the policy defining his rights, submitted a claim. The insurer unequivocally rejected the claim on the grounds the claim was not covered by the policy; and the insured failed to pursue the matter. In a later lawsuit the insured argued the insurer was estopped from relying on the statute of limitations, contending the insurer's denial of the claim was a "misrepresentation" which caused insured's failure to pursue the claim. Citing the rule that an insurer must deal with his insured in good faith and take no unfair advantage, insured claimed the denial of the claim amounted to concealing a "fact" (i.e., of coverage) sufficient to estop reliance on the statute of limitations.

The *Neff* court rejected this contention. It reasoned that if an insurer was held to have concealed facts sufficient to estop reliance on the statute of limitations merely because it denied a claim without disclosing potential legal theories or grounds for coverage, an insurer would rarely be entitled to litigate claims disputes within the limitation periods, as such periods would be indefinitely suspended until the insured sought and obtained legal advice indicating the grounds to challenge the insurer's decision. (*Id.* at p. 172.) The *Neff* court instead concluded that, because the insured possessed both the facts and his policy, the insurer could deny the claim without concomitantly waiving the statute of limitations: ". . . Defendant [insurer], concealing no *fact* from the insured, was free to take this position. The insured, knowing all the facts which were known to defendant, was then free to litigate the issue of the liability which defendant had denied. It is a matter of common knowledge that there are often differences of opinion concerning liability under insurance policies and *no mere denial of liability, even though it be alleged to have been made through fraud or mistake, should be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations.*" (30 Cal.2d at pp. 172-173, italics added.)

It is undisputed that the Loves knew the operative facts (i.e., their home was damaged and the causes of damage included third party negligence), and there is no allegation they did not possess the policy provisions outlining their rights. Finally, they admit being told unequivocally in 1981 their claim was denied for lack of coverage. FIE neither "misrepresented" nor "concealed" any facts (as opposed to pertinent law or legal theories) upon which the Loves' claim was based, nor did it conceal the terms of the policy or the fact it denied the claim for lack of coverage.[5] Under *Neff*, as well as

---

[5] Although the Loves cite numerous cases for the contention that nondisclosure, concealment or affirmative misrepresentations can estop an insurer from relying on the statute of limitations, those cases are inapposite. Several cases involved estoppel because the defend-

numerous subsequent cases, ignorance of legal theories does not toll the statute of limitations. (Cf. *State Farm Fire & Casualty Co.* v. *Superior Court, supra*, 210 Cal.App.3d at p. 608 ["ignorance of legal remedy does not toll the statute of limitations"]; *Cardosa* v. *Fireman's Fund Ins. Co.* (1956) 144 Cal.App.2d 279 [300 P.2d 875] [claim denied by agent for lack of coverage; insurer not estopped to rely on statute of limitations merely because insured "relied" on denial in failing to file suit].) As recognized in *Matsumoto* v. *Republic Ins. Co.* (9th Cir. 1986) 792 F.2d 869, an insurer (who conceals no facts) is not estopped to assert statute of limitations because denial of claim was "at most, an incorrect interpretation of the terms of [the policy] . . . . Here, as in *Neff*, the insurer's denial of liability may have caused the insured not to pursue a cause of action, but this does not toll the statute of limitations." (*Id.* at p. 872.)

The Loves seek to avoid the dispositive impact of *Neff* by arguing that *Neff* was decided at a time when there was no fiduciary relationship between an insurer and an insured, whereas current law recognizes that such a relationship (and its attendant duties) now exists. Positing such a relationship, the Loves argue FIE's fiduciary obligation of full disclosure of all facts pertinent to the relationship was breached when it failed to disclose poten-

---

ants' nondisclosures and/or misrepresentations effectively concealed the *facts* upon which the cause of action rested, *not* the *legal theories* supporting the complainants' claims. The cases of *Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226 [153 P.2d 325]; *Kimball* v. *Pacific Gas & Elec. Co.* (1934) 220 Cal. 203 [30 P.2d 39]; *Scott* v. *Federal Life Ins. Co.* (1962) 200 Cal.App.2d 384 [19 Cal.Rptr. 258] and *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315 [114 Cal.Rptr. 171, 91 A.L.R.3d 981], relied upon by the Loves, are all of this genre. The Loves also cite several other cases (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45]; *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418 [158 Cal.Rptr. 828, 600 P.2d 1060]; and *Westrick* v. *State Farm Insurance* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214]) for the proposition that misrepresentations or nondisclosures about the terms of the insurance policy, even though the documents are possessed by the insured, breach the insurer's fiduciary obligations. However, none of those cases stands for the proposition that failure to disclose a *legal theory* of coverage is tantamount to nondisclosure of a *fact* sufficient to toll the statute of limitations. *Wyatt* merely held that a borrower, even though he signed a stack of legal documents, could sue his loan broker who (in response to the borrower's direct questions) had orally misrepresented and failed to fully disclose the true *facts* of the loan transaction. (*Wyatt* v. *Union Mortgage Co., supra*, 24 Cal.3d at pp. 780, 782-784.) *Davis* held that where the contract of insurance contains an arbitration clause buried in an obscure location, and it is apparent the insured is unaware of the *fact* this procedural device is available, an insurer may not fail to disclose this fact to his insured, because such nondisclosure effectively transforms a remedy originally intended to be mutually available into a remedy unilaterally open to the insurer. (*Davis* v. *Blue Cross, supra*, 25 Cal.3d at pp. 426-431.) Finally, *Westrick* held that where the circumstances permit the insured justifiably to rely on his agent to obtain insurance for a vehicle, the agent may not escape liability for failing to obtain insurance merely because he made no express promise or remained silent in response to the insured's request for insurance, but must instead affirmatively disclose the *fact* that there would be no insurance. (*Westrick* v. *State Farm, supra*, 137 Cal.App.3d at pp. 690-693.)

tial coverage. They further argue their reliance on FIE's fiduciary obligation induced them to withhold investigation of the bona fides of coverage denial.

We cannot accept Loves' blanket characterization of FIE as a "fiduciary."[6] ■ Of course, an insurer (like any other party to a contract) owes a general duty of good faith and fair dealing. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768-769 [206 Cal.Rptr. 354, 686 P.2d 1158].) Moreover, because of the "special relationship" inherent in the unique nature of an insurance contract, the insurer's obligations attendant to its duty of good faith are heightened. Such obligations have been characterized as *akin* to fiduciary-type responsibilities. (*Frommoethelydo* v. *Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214-215 [228 Cal.Rptr. 160, 721 P.2d 41].) Because of this unique "special relationship," a breach of the obligation of good faith may give rise to tort (rather than mere contractual) remedies. (See generally, *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-693 [254 Cal.Rptr. 211, 765 P.2d 373] [discussing reasons for disparity of tort versus contract remedies for breach of implied covenant of good faith].)

However, the California Supreme Court has never squarely held that an insurer is a *true* fiduciary to its insured. (*Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 445 [208 Cal.Rptr. 511] [assuming a fiduciary relationship exists].) Instead, the Supreme Court has consistently described it as a "special relationship." (*Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 687; *Seaman's Direct Buying Service* v. *Standard Oil Co., supra*, 36 Cal.3d at p. 768.) Admittedly, the insurer's "special relationship" to its insured encompasses fiduciary-like duties of decency and humanity. (*Frommoethelydo* v. *Fire Ins. Exchange, supra*, 42 Cal.3d at p. 215.) We perceive, however, that the "special" nature of the duties owed by an insurer are not owed because the insurer is a *true* fiduciary, but simply because such "special" duties are consonant with the special nature and purpose inherent in an insurance contract. ■ The covenant of good faith and fair dealing is implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed. (*Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d 654, 689-690.) Because contracts differ, the nature and extent of the duties owed under the implied covenant are also variable and "will depend on the contractual purposes." (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].)

---

[6] This court has previously intimated its reservations about loose characterizations of an insurer as a fiduciary. (See *State Farm Fire & Casualty Co.* v. *Superior Court* (1989) 216 Cal.App.3d 1222, 1226-1227, 1233 & fn. 6 to conc. opn. at p. 1233 [265 Cal.Rptr. 372]; *Henry* v. *Associated Indemnity Corp.* (1990) 217 Cal.App.3d 1405, 1418-1419 [266 Cal.Rptr. 578].)

Insurance contracts are unique in nature and purpose. (See generally, *Foley, supra*, 47 Cal.3d at pp. 682-693 [describing differences between insurance contracts and ordinary commercial contracts].) An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. (*Egan, supra*, 24 Cal.3d at p. 819.) The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need. (*Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1, 29-30 [148 Cal.Rptr. 653].) Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims. Thus, an insurer must investigate claims thoroughly (*Egan, supra*, 24 Cal.3d at p. 819); it may not deny coverage based on either unduly restrictive policy interpretations (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 277-278 [203 Cal.Rptr. 672]) or standards known to be improper (*Moore* v. *American United Life Ins. Co.* (1984) 150 Cal.App.3d 610, 637-638 [197 Cal.Rptr. 878]); it may not unreasonably delay in processing or paying claims (*McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1048 [200 Cal.Rptr. 732]).

These special duties, at least to the extent breaches thereof give rise to tort liability, find no counterpart in the obligations owed by parties to ordinary commercial contracts. The rationale for the difference in obligations is apparent. If an insurer were free of such special duties and could deny or delay payment of clearly owed debts with impunity, the insured would be deprived of the precise benefit the contract was designed to secure (i.e., peace of mind) and would suffer the precise harm (i.e., lack of funds in times of crisis) the contract was designed to prevent. (*Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1117-1118 [207 Cal.Rptr. 123].) To avoid or discourage conduct which would thus frustrate realization of the contract's principal benefit (i.e., peace of mind), special and heightened implied duties of good faith are imposed on insurers and made enforceable in tort. While these "special" duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, *not* because an insurer *is* a fiduciary.

 Unique obligations are imposed upon true fiduciaries which are not found in the insurance relationship. For example, a true fiduciary must first consider and always act in the best interests of its trust and not allow self-interest to overpower its duty to act in the trust's best interests. (See, e.g., *Toedter* v. *Bradshaw* (1958) 164 Cal.App.2d 200, 208 [330 P.2d 688].) An insurer, however, may give its own interests consideration equal to that it

gives the interests of its insured (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at pp. 818-819); it is not required to disregard the interests of its shareholders and other policyholders when evaluating claims (*Austero* v. *National Cas. Co., supra,* 84 Cal.App.3d at p. 30); and it is not required to pay noncovered claims, even though payment would be in the best interests of its insured (*Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1278 [235 Cal.Rptr. 34]).

▮ Moreover, unlike the rule which prohibits true fiduciaries from commingling trust funds with the funds of others or from profiting by using the funds received from the beneficiary (see, e.g., *Estate of Evans* (1944) 62 Cal.App.2d 249, 258 [144 P.2d 625]), no similar prohibition circumscribes an insurer's use of premiums. Indeed, pooling of funds from insureds to create loss reserves, and investing such pooled funds for profit in order to enhance the insurer's financial strength, appear integral parts of the business of insurance.

The above examples are illustrative, not exhaustive, of the different nature of the duties owed by insurers versus true fiduciaries.[7] ▮ Because of these differences, and in the absence of Supreme Court precedent declaring an insurer to be a *true* fiduciary, we decline to import uncritically the entire cargo of fiduciary obligations into the port of insurance law. We therefore reject Loves' attempt to denigrate the continued vitality of *Neff.* We also reject Loves' related argument that they were excused from exercising an ordinary degree of diligence in investigating or pursuing their rights because of the alleged existence of a fiduciary relationship.[8]

---

[7] Some courts (see *Gibson* v. *Government Employees Ins. Co., supra,* 162 Cal.App.3d 441, 444-446) and some secondary sources (see 1 Cal. Insurance Law & Practice (1989 rev.) Claims Handling, § 13.02[2][a], pp. 13-8 to 13-9) have accepted without much question that the relationship between an insurer and its insured is a fiduciary one. However, in a manual co-authored by recently retired Supreme Court Justice Kaufman, some leading commentators on the subject of insurance bad faith have reached the opposite conclusion: "While making repeated references to the insurer's 'fiduciary responsibility' to the insured, the Supreme Court has never stated the insurer-insured relationship *is* a 'fiduciary relationship' . . . . [¶] It seems doubtful that insurer-insured is a 'fiduciary relationship' in the same sense as trustee-beneficiary, attorney-client, etc. It is merely a relationship characterized by unequal bargaining power, with a potential for special dependency by the insured on the insurer. Because of this special dependency, duties are imposed on the insurer which are *akin to those imposed on fiduciaries.* But that does *not* make it a fiduciary relationship!" (Kornblum et al., Cal. Practice Guide: Bad Faith (TRG 1989) §§ 3:74-3:74.1, pp. 3-34 to 3-35.) As previously discussed, our analysis accords with this latter view.

[8] The cases cited by Love involving fiduciaries do not suggest a different rule, as they all involved defendants who concealed or misrepresented the *facts* upon which the claims were predicated, not defendants who failed to disclose legal theories for the action. In *Stafford* v. *Schultz* (1954) 42 Cal.2d 767, 775-779 [270 P.2d 1], the doctor's misrepresentation and nondisclosure of the facts (i.e., the extent of plaintiff's injury and the doctor's failure to perform

We are unaware of any cases requiring an insurer to advise an insured of different legal theories or statutory provisions which an insured could use to avoid policy exclusions. The authorities suggest a contrary rule. "An insurer is under no obligation to explain to the insured all possible legal theories of recovery." (*Lawrence v. Western Mutual Ins. Co., supra*, 204 Cal.App.3d 565, 574.) Neither the insured's ignorance of nor the insurer's failure to explain the different legal theories upon which suit might be filed extends the time within which the insured is required to file his action. The reason that "ignorance of legal remedy does not toll the statute of limitations" (*State Farm Fire & Casualty Co. v. Superior Court, supra*, 210 Cal.App.3d at p. 608) is apparent. If such argument were accepted, " . . . the practical effect would be to nullify the [statute of limitations]. 'Any plaintiff could simply allege ignorance of his or her legal rights against a particular defendant. This is not difficult. Most people do not know the legal answers to questions arising from certain circumstances.' [*McGee v. Weinberg, supra*, 97 Cal.App.3d [798] at p. 804 [159 Cal.Rptr. 86]]." (*Lawrence v. Western Mutual Ins. Co., supra*, 204 Cal.App.3d at p. 573.) The *Neff* court, in refusing to apply estoppel to facts identical to this case, used a similar rationale: If denial of an otherwise covered claim were always treated as concealment of facts upon which to premise estoppel, " . . . that would mean that no insurer could deny liability without indefinitely suspending the running of the statute of limitations until perchance the insured . . . might obtain at some future time legal advice indicating the view that liability existed." (*Neff v. New York Life Ins. Co., supra*, 30 Cal.2d at p. 172.)

Thus, the courts have not tolled the statute of limitations merely because the plaintiff was ignorant or not informed of his legal remedies. For these reasons we conclude FIE, which we determine not to be a true fiduciary, is not estopped from raising the statute of limitations to bar plaintiff's claims.

5. *Summary Judgment Was Properly Entered on the Loves' Causes of Action, Insofar as Such Claims Were Premised on the Purported Acts of Misfeasance Occurring After Loves' Claim Was Resubmitted*

 The Loves finally contend that, even if their claims relating to the 1981 denial of coverage are time-barred, FIE committed independent acts of bad faith in delaying 17 months before rejecting the claim the Loves had

---

certain diagnostic procedures before representing that the mode of treatment would be effective) tolled the statute of limitations on plaintiff's malpractice complaint. Again, in *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1163-1167 [217 Cal.Rptr. 89], the court concluded the clients' malpractice action was tolled because they were unaware of a critical fact (i.e., damages from a defective tax shelter) until their appeal from an adverse tax determination was rejected on appeal, and they had no reason to suspect malpractice earlier because the attorney continually reassured them the appeal would succeed. (*Id.* at pp. 1163-1167.)

resubmitted in January of 1986. The Loves contend their bad faith claims based on these subsequent events were timely filed. We conclude the trial court correctly entered summary judgment as to this alternative theory.

At the time the Loves resubmitted their claim for damages, the statute of limitations on their right to sue for benefits under the policy had already expired.[9] Where an insured's right to collect policy benefits is already time-barred, he may not resurrect his rights merely by resubmitting a claim after the lapse of the limitations period. (*Cardosa* v. *Fireman's Fund Ins. Co., supra*, 144 Cal.App.2d 279, 282-283 [where insured submits claim to agent, who denies claim for lack of coverage, resubmission of claim after lapse of limitations period does not revive right to sue insurer for denial of the resubmitted claim].)

Because all of the Loves' rights under the policy had already lapsed, the Loves' resubmission of the claim does not entitle them to recover damages for breach of the covenant of good faith and fair dealing merely because FIE's investigation or its denial of the claim was tardy or inadequate. Tort liability for breach of the implied covenant of good faith and fair dealing has been variously measured. The primary test is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith. (*Frommoethe-lydo* v. *Fire Ins. Exchange, supra*, 42 Cal.3d 208, 214-215.) Where benefits are withheld for proper cause, there is no breach of the implied covenant. (*California Shoppers Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171].) The duty imposed by law is not unreasonably to withhold payments due under the policy. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920 [148 Cal.Rptr. 389, 582 P.2d 980].)

█ Thus, there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause. (See also *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 184 Cal.App.3d 1428, 1433 [229 Cal.Rptr. 409] [no award for bad faith can be made "without first establishing that coverage exists"]; *Kopczynski* v. *Prudential Ins. Co.* (1985) 164 Cal.App.3d 846, 849 [211 Cal.Rptr. 12]].)[10] █ Here, the undisputed

---

[9] As previously discussed (see § 3, *ante*), the Loves' causes of action on the policy accrued in February 1981, and were subject to a four-year statute of limitations. That four-year period expired in February 1985, almost eleven months before the Loves resubmitted their claim in late December 1985 or early January 1986.

[10] Our interpretation that a plaintiff must show, at a minimum, benefits were delayed or withheld, accords with the analysis of the commentators: "Where benefits are *fully and promptly paid*, no action lies for breach of the implied covenant—no matter how hostile or

facts show the threshold requirement is absent. No benefits due were withheld or delayed, because the Loves' claim to benefits was already time-barred.

The Loves contend delay in denying a claim constitutes bad faith even if no coverage exists. The cases they rely upon, however, are inapposite. *McCormick* v. *Sentinel Life Ins. Co., supra*, 153 Cal.App.3d 1030, is cited as holding that lengthy delay in denying a claim can itself give rise to bad faith damages. However, the *McCormick* court operated on the assumption that benefits were in fact due, and merely addressed the issue of whether the insurer was excused from paying because of the insured's failure to provide sufficient information. (*Id.* at pp. 1041-1046.) The *McCormick* court's statement that lengthy delay in processing a claim can constitute bad faith was based on its conclusion that such a delay can be tantamount to a denial of benefits *otherwise due*. (*Id.* at pp. 1048-1051.) *McCormick* did not conclude that delayed denial of an uncovered claim is an independent ground for recovery of damages.

The Loves' reliance on *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169 [231 Cal.Rptr. 791] is similarly misplaced. The *Lesher* court merely held that when an insurer provides a defense to its insured, the insurer can be held liable if the defense it provides is inadequate, causing its insured losses which an otherwise adequate defense would have prevented, even though there is an ultimate determination the insurer had no duty to indemnify or defend. (*Id.* at pp. 186-187.)[11]

---

egregious the insurer's conduct toward the insured may have been prior to such payment. *I.e., absent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant.* [Citation.]" (Kornblum et al., Cal. Practice Guide: Bad Faith, *supra*, § 4:28, p. 4-9, italics added.)

[11] Loves rely on the *Lesher* court's statement that "Travelers does not advance a persuasive basis for holding that an insurer need process in a prompt and competent manner only those claims for which there is coverage. Logic compels the conclusion that under section 790.03 the insurer must process all claims submitted to it promptly and competently, even in those instances where no coverage will ultimately be provided." (*Id.* at p. 190.) We are unpersuaded that this language undermines the general rule that liability for bad faith depends on denial of policy benefits otherwise due, because this statement cannot be divorced from its factual context. In *Lesher,* the insured claimed injury from an inadequate defense, based in part on the appointed attorney's failure to negotiate or evaluate the advantages of settlement with the third parties (*id.* at pp. 182, 188-190) and in part on Travelers' failure to provide replacement counsel for the insured until a few weeks before trial (which forced the insured into a disadvantageous settlement). (*Id.* at pp. 183-184.) The duty promptly and competently to process claims was discussed within the context of determining *whether the defense as provided discharged insurer's duty to provide a prompt and competent defense.*

*Lesher* did not hold that bad faith liability could be founded on delay in denying an uncovered claim, at least where the delay caused no prejudice to the insured's other rights under the policy. To the extent the quoted language was so intended, it appears inconsistent with controlling Supreme Court language discussed above. Moreover, because the quoted lan-

Our conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted. The covenant of good faith and fair dealing is implied in law to assure that a contracting party "refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement." (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 818.) ▉ In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it frustrates the insured's *primary* right to receive the benefits of his contract—i.e., prompt compensation for losses. Absent that primary right, however, the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., concurred.

**WIENER, J.**—I concur in the result reached by the majority in this case. The opinion's discussion regarding the extent to which the insurer is a "true" fiduciary is well-written and certainly interesting in the abstract. Unfortunately, I find the discussion completely unnecessary to the result we reach. I do not read the majority to dispute that insurers owe fiduciary duties to insureds under certain circumstances. The plaintiffs themselves characterize the relationship between insurer and insured as "quasi-fiduciary" in nature. The only question before us is whether the fiduciary aspects of the relationship compel the insurer, when it denies a claim on grounds of no coverage, to explain to the insured the reasons it might be wrong. I am convinced that the reasoning of *Neff* v. *New York Life Ins. Co.* (1947) 30 Cal.2d 165 [180 P.2d 900, 171 A.L.R. 563] remains good law and has not been undercut by more recent cases explicating the fiduciary components of the insurer-insured relationship.

---

guage cites no authority, and (to our knowledge) has not been subsequently relied upon by other courts, the cited language appears to be an isolated and unsupported comment, which we decline to follow.

The majority's academic excursion appears to be motivated by a concern that courts in future cases will be seduced by the term "fiduciary" and impose unwarranted liability on insurers. I see little danger of such confusion. Rather, I fear that the rigid compartmentalization and convenient labeling suggested by the opinion may serve as a substitute for thoughtful analysis of whether the circumstances of a particular case justify the imposition of enhanced duties on the insurer. Accordingly, I cannot join the majority's extended and unnecessary exegesis.

Appellants' petition for review by the Supreme Court was denied September 13, 1990. Mosk, J., was of the opinion that the petition should be granted.