[Civ. No. 9673.   Second Appellate District, Division Two.—April 16, 1935.]

ESTHER CRONIN, Respondent, v. JOHN P. COYLE, as Receiver, etc., et al., Defendants; THE MERCER CASUALTY COMPANY (a Corporation), Appellant.

Elbert E. Hensley for Appellant.

Martin Forrest for Respondent.

WILLIS, J., *pro tem.*—Plaintiff in this action secured judgment against defendants for the sum of $3,062, as damages for injuries sustained by her as a result of the negligent operation of a taxicab in which she was a passenger and being transported over a street in the city of Los Angeles. Defendant Mercer Casualty Company alone appeals from the judgment, and also attempts to appeal from an order denying a motion for new trial.

In a rather formidable and voluminous opening brief appellant states six questions as those involved in the appeal, and specifies as error (1) the admission and retention in evidence, over objection and against a motion to strike, of exhibit 1, being the policy of public liability insurance upon which plaintiff founded appellant's liability; (2) the denial of appellant's motion for nonsuit; (3) the making of findings contrary to evidence in respect to issuance of the policy, its continued existence in force and effect at the time of the accident herein, its cancellation as pleaded in the answer, and its annulment by issuance of a policy by another company as pleaded in the answer, and (4) in denying appellant's motion for a new trial.

■ There was no error in admitting the policy in evidence nor in denying the motion to strike the same from evidence. Upon examination of the pleadings and the testimony of Arthur R. Groocox, a motor vehicle inspector for the city of Los Angeles in charge of the motor vehicle division records of the board of public utilities, we find a *prima facie* basis for its reception in evidence founded on admissions of appellant in its first answer and upon such testimony, which sufficiently identified the policy as one issued by appellant company on September 8, 1931, and filed September 18, 1931, with the board, in whose possession it had remained up to the time of trial. ■ These conclusions apply with equal force to the claim of error in denying the motion for nonsuit and require a determination of that claim adverse to appellant's contention. ■ And for the same reason the claim that the court's finding (No. VII) that such policy was duly issued is contrary to the evidence is not well taken. While there is a denial of execution and issuance of this policy by appellant in its amended answer and evidence that it was signed by a subagent of the legally appointed agent, there was in evidence before the court testimony and documentary proofs showing recognition of the policy by appellant sufficient to sustain the finding that such policy was duly issued by it. The company may not absolve itself from liability for a contract which it has authorized or ratified, although the contract may have been secured by a person not an agent or solicitor in the full meaning of section 633 of the Political Code. (*Frasch* v. *London & Lancashire F. Ins. Co.*, 213 Cal. 219 [2 Pac. (2d) 147].)

This brings us to the more serious and difficult question as to the sufficiency of the evidence to support the finding that such policy was in full force and effect on December 6, 1931, on which date the accident herein complained of occurred. This question is brought sharply into issue by the special defenses, and was the center around which much evidence, both oral and documentary, was introduced. Upon the evidence the court found that the policy was in force at the time of the accident, that it had not been previously canceled by appellant and that it had not been annulled and rendered void by reason of the assured taking out a policy of insurance with another company prior to the accident

without having permission of appellant so to do indorsed on said policy.

The probative facts, established without apparent dispute, upon which the court made its findings of these ultimate facts are substantially as follows: B. K. Elgin, residing in Indianapolis, Indiana, from July 1, 1931, to June, 1932, was the agent in California of appellant company, a foreign corporation, and was licensed as such under the provisions of section 633 of the Political Code as it then existed. He had one George O'Hara of San Francisco acting in California as his subagent, who, on September 8, 1931, executed as agent of appellant the policy here in question, bearing number 80070, and the same was filed with the board of public utilities of the city of Los Angeles on September 18, 1931, in accordance with provisions of an ordinance regulating passenger carrying vehicles. The issuance of this policy being reported by O'Hara to Elgin at Indianapolis, the latter wired to the board on September 28th that the policy was issued without permission of the company or of Elgin, and that such issuance was not acceptable. On September 29th, by direction of the secretary of the company, Elgin sent a telegram to the board, signing the company's name thereon, stating: "Please cancel Mercer policy 80070, issued September eighteenth favor Red Top Cab Company Los Angeles cancellation effective as of noon October thirtieth cancelled account of hazardous risk and on prohibitive list of this company confirmation by air mail." This telegram was followed by air mail letter of September 29th copying and confirming the telegram.

On October 30th, while in Los Angeles, Elgin delivered a letter to the board in which he stated in reference to the cancellation of the Mercer policy: "I readily understand that you are right in the premises in not accepting a wire cancellation and agree that you have a right to insist upon a confirmation of such wire by letter, which I failed to give you. This letter, however, will serve as a cancellation notice of said policy effective thirty days from date. However, I am insuring the Red Top Cab Company in the Prudential Casualty and Surety Company of St. Louis, Missouri, effective as of November 1st and I trust you will permit me to take up the Mercer policy as soon as the Prudential policy is approved by your Board." This letter

was signed "Mercer Casualty Company of Celina, Ohio, By B. K. Elgin, Special Representative". Elgin was at the same time the agent of Prudential Casualty and Surety Company in California, and on November 1, 1931, he issued a similar policy of the latter company, numbered A U 38951, covering the same risks and in favor of the same assured, although at that time the latter company was not on the approved list of insurance carriers of the board of public utilities of Los Angeles, authorized to write insurance covering public liability risks as provided in the city ordinance. The policy does not appear in evidence herein. The assured continued to pay the premiums to Elgin, who occupied the dual capacity of agent for both companies, from November 1, 1931, no part thereof having been paid to the appellant company by its agent, Elgin, after November 1, 1931.

On November 30th Elgin sent the following letter to the board of public utilities: "This will be your authority to extend the present Mercer Casualty Co. policy and/or Binder until January 1, 1932, for John P. Coyle, Receiver for General Cab Co. DBA Red Top Cab Company. In the meantime I anticipate having the Prudential Casualty & Surety Company approved and will file their policy, thereby relieving the Mercer Casualty Co. from any liability whatsoever in connection with this risk." It was signed "Mercer Casualty Company by B. K. Elgin, Representative". On December 6th the accident herein occurred. On December 10th appellant, from its office in Celina, Ohio, wired to the board requesting advice as to the effective date of termination of its policy No. 80070, to which the board replied on December 11th that the policy had been extended to January 1, 1932, by B. K. Elgin. On December 14th the Prudential Casualty & Surety Company filed with the board its application to write insurance under the ordinance, and on December 29th a license so to do was granted, and on December 30th policy number A U 38959 of such company was countersigned by B. K. Elgin as agent, covering the same risks of the same assured, and was filed with the board.

The policy issued by appellant contained provisions allowing cancellation thereof by the company upon five days' previous notice in writing to the assured, if cancellation is sought on the ground of failure to pay premiums or for

extrahazardous conditions due to conduct of the assured, and for other causes upon thirty days' previous notice in writing to the assured and the filing of a duplicate thereof within said time limit with the board of public utilities of the city of Los Angeles, stating the reasons therefor and the effective date thereof. We find no evidence herein of delivery of any notice of cancellation by appellant to the assured, but it appears in the testimony of B. K. Elgin that in the latter part of October, 1931, he had a conversation with Coyle, the assured, at the latter's office in Los Angeles, in which conversation Elgin stated to Coyle that until the Prudential Casualty and Surety Company was approved by the board of public utilities he would let the Mercer Casualty Company policy remain on record as a matter of accommodation to the assured so as not to deprive him of his right to carry on the taxicab business in the interim before the Prudential Company would be approved and its policy accepted by the board of public utilities. He further stated to the assured that the Mercer Company would not accept his business of insurance. Subsequent to November 1, 1931, claims for losses were reported by the assured to the adjuster of the Prudential Company and were adjusted and claims were paid by draft drawn on the Prudential Company during November and December, 1931. The claim of plaintiff herein against the assured was among those reported to such adjuster, and receipt thereof was acknowledged by the Prudential Company on December 18, 1931, and listed on its records by number.

On March 31, 1931, appellant company made application to the board of public utilities of Los Angeles to write all claims of insurance within the jurisdiction of that board. On the same date it applied to the insurance commissioner of California to approve and license the appointment of B. K. Elgin as its agent in California under the provisions of section 633 of the Political Code as it then existed. On July 1, 1931, a license was issued to B. K. Elgin by the insurance commissioner reciting that Elgin had complied with the provisions of section 633 of the Political Code. That section required as a condition precedent to the issuance of a license to an insurance agent or solicitor that he present a duplicate power of attorney from the company authorizing him to act as such agent or solicitor. Under this appointment Elgin proceeded to act as such agent from his home office in

Indianapolis, through subagents residing in California. He handled all public vehicle insurance business in California, accepted or rejected applications for policies submitted by his subagents, collected premiums and extended and canceled policies, apparently having and freely using authority in all these respects. Appellant's application to the board for permission to do business recited that the general agents of the company were "Rutherford & Elgin". By a written agency contract executed in January, 1931, the company had appointed Elgin as its agent in Indiana and in any part of the country in which the company was licensed, to receive applications for insurance and as agent to perform such other acts as he might be authorized to do. On October 28, 1931, appellant company, by its secretary, sent its letter to Elgin, while he was in Los Angeles, directing him to inform all his subagents in California and elsewhere that in the future no public passenger carrying business shall be "bound" by them for the Mercer Casualty Company unless the same has first been referred to the company and accepted by them.

From all this and other evidence in the case it is made to clearly appear that Elgin was the general agent of appellant company for California, authorized to do anything in respect to the soliciting, writing, extending or canceling of liability policies which the company itself might do. (*Bank of Anderson* v. *Home Ins. Co.*, 14 Cal. App. 208 [111 Pac. 507].)

The powers of an agent for an insurance company are, as a general rule, governed by the general law of agency. His powers are varied by the character of the functions he is employed to perform. He may be a general agent with general powers, or his powers may be limited by the company. He possesses such powers as have been conferred by the company or as third persons have a right to assume he possesses under the circumstances of the case; and as a general rule his powers, as to those dealing with him, are determined by the nature of the business entrusted to him and are *prima facie* coextensive with its requirements. (*Frasch* v. *London & Lancashire F. Ins. Co., supra.*) Ordinarily a general agent is one who has all the powers of his principal as to the business in which he is engaged, except as limited by the company to whatever it deems

expedient. But in the absence of notice, actual or constructive, to the insured of any limitations upon such agent's authority, a general agent may bind the company by any acts, agreements or representations that are within the ordinary scope and limits of the insurance business entrusted to him, although they are in violation of private instructions or restrictions upon his authority. (32 C. J. 1066; Cooley, Briefs on Law of Insurance, vol. 1, p. 345.) ▮ And it may be stated as a rule that where an agent has power to issue a policy in the first instance he has the power also to renew such policies (Cooley, Briefs on Law of Insurance, vol. 1, p. 348); and as a corollary proposition he has power to extend the term of such policies.

▮ Measured by these rules, applied to the probative facts above stated, we are satisfied that the court did not err in finding the ultimate fact of noncancellation as of a date prior to the accident herein. Elgin, as general agent, gave to the board a notice of cancellation on September 29, 1931, gave another written notice of cancellation to the board on October 30, 1931, but gave no written notice of cancellation at any time to the assured. On November 30, 1931, he gave to the board a written notice of extension of appellant's policy to January 1, 1932, and informed the assured that such policy would remain on record until the Prudential policy was approved by the board. In so far as concerns the board of public utilities and Coyle, the assured, and plaintiff herein, who was one of the potential beneficiaries under the policy and for whose benefit and protection it was required, approved and accepted, these acts of the general agent, Elgin, were the acts of the company and binding on it. Thereon the trial court correctly found that the policy issued by appellant had not been canceled prior to the date of the accident herein.

▮ This leaves for solution the problem presented by the evidence relating to the issuance and use of the Prudential policy. The policy issued by appellant contained a provision to the effect that, with permission indorsed thereon, the assured may carry other insurance against loss or damage covered by such policy, in which case such loss should be prorated among the policies. Appellant in its answer alleged that the Prudential policy was issued to the assured without permission of appellant, and thereby rendered the

policy of the Mercer Company "null and void". The court found upon conflicting evidence that it was not true that the Prudential policy was issued to or received by the assured, and that it was not true that the Mercer policy was null and void because of the issuance of any such policy.

It is patent that the claim asserted by appellant in its special defense, that issuance and acceptance of another policy on the same risk would render appellant's policy null and void, is not well founded. The terms and language of the policy do not support such defense. However, on this appeal the appellant has transmuted the claim thus presented by its answer into a claim that the issuance to and acceptance by the assured of the Prudential policy operated as a matter of law to release appellant from the obligations on its policy, under the general rule announced in some cases to the effect that an insurance policy is in effect canceled when another policy is substituted for it. This rule cannot of course operate without the necessary facts showing a substitution. The court below, on a conflict of evidence, found that no policy of the Prudential Company was issued to or received by the assured prior to the date of the accident herein. There is ample and substantial support for such finding in the evidence. This court may not go behind that finding, nor substitute another of its own. ■ Furthermore, we are not unmindful of the fact that the Prudential Company had no license to furnish public liability insurance in Los Angeles until December 29, 1931, and that no policy of that company was actually substituted for the Mercer policy in the records of the board of public utilities until this last-mentioned date. In the meantime respondent had suffered her injuries at the hands of the assured on December 6, 1931, at a time when the Mercer policy was still on file in the office of the board of public utilities, standing as the sole authority for the continued existence of the license of the assured to operate his taxicabs in Los Angeles. The ordinance of the city of Los Angeles in evidence herein required the owner of the taxicabs which he sought to operate in the city as passenger carrying vehicles to file with the board of public utilities and keep in effect a policy of insurance, insuring the public against loss or damage that may result from the operation of such vehicles, or in lieu thereof a bond of certain character and

with specified conditions. The policy executed by appellant and filed under this ordinance provided that it shall inure to and be for the benefit and protection of anyone who shall sustain damage or injury by reason of the negligence on the part of the driver or operator of the assured's vehicles while being operated as passenger carrying vehicles. Respondent was injured under the circumstances just stated. Regardless of the acts of the assured in respect to the manipulations of the two insurance policies by the agent in his dual capacity as agent of both companies, respondent, as the injured party, is entitled to recover against the insurance company whose policy constituted the subsisting basis on which the assured's license to operate was founded at the date of injury. It follows that the motion for new trial was properly denied.

The appeal from the order denying a motion for new trial is dismissed. The judgment is affirmed.

Stephens, P. J., and Crail, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 16, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1935.