Arlen GASNIK and Karen Gasnik, Plaintiffs,

v.

STATE FARM INSURANCE CO., Howard Zeleny and Randy Nobuhrio and Does 1–100, Defendants.

No. CV–F–92–5430.

United States District Court, E.D. California.

Aug. 24, 1992.

parties with an opportunity to address the issue of jurisdiction.

246

Theodore W. Hoppe, McCormick Barstow Sheppard Wayte and Carruth, Fresno, CA, for defendant State Farm Ins. Co.

Leslie Clarke Rountree, II, Fresno, CA, for plaintiffs.

ORDER GRANTING DEFENDANTS' MOTIONS TO DROP INDIVIDUAL DEFENDANTS AND TO DISMISS DEFENDANTS' BAD FAITH AND PUNITIVE DAMAGES CLAIMS, AND DENYING DEFENDANTS' MOTIONS TO STRIKE AND FOR JUDICIAL NOTICE

COYLE, Chief Judge.

On August 10, 1992, the court heard defendants' motions to drop the individual defendants, to dismiss, to strike, and for judicial notice. Upon due consideration of the written and oral arguments of the parties, the court now enters its order as set forth herein.

## I. *Background*

Defendant State Farm Insurance Co. ("State Farm") insures plaintiffs' three automobiles. Plaintiffs allege that in June of 1985 they requested defendant Howard Zeleny ("Zeleny"), their insurance agent and/or broker, to increase their uninsured/underinsured motorist coverage from $30,000/$60,000 to "$1,000,000.00 across the board." Cmplt. 3:8. Plaintiffs further allege that Zeleny "agreed to do this gradually indicating to plaintiffs that if he raised their limits across the board immediately to $1,000,000.00 it would raise too many red flags and the company might not agree to it." Cmplt. 3:9–12. In July of 1985 plaintiffs' bodily injury liability coverage was raised from $100,000/$300,000 to $500,000/$500,000 but their uninsured/underinsured motorist coverage remained at $30,000/$60,000.

On September 7, 1989, plaintiff Arlen Gasnik ("Arlen") was seriously injured in an accident involving third party, Sandra Arrendondo ("Arrendondo"). Arlen settled his claim against Arrendondo for her policy limit of $15,000 and pursued State Farm for underinsured motorist benefits due him. (The complaint alleges that Arlen's medical bills are in excess of $61,000.) State Farm subsequently determined that plaintiffs' policy provided underinsured motorist benefits in the amount of $30,000/$60,000 and offered Arlen $15,000 ($30,000 offset by the $15,000 payment from Arrendondo's insurance).

On April 9, 1992, plaintiffs filed a complaint in state court alleging causes of action for negligence, negligent misrepresentation, reformation, and bad faith denial of insurance benefits. They also seek declaratory relief.

State Farm is an Illinois corporation with its principal place of business in Illinois. Defendants Zeleny and Randy Nobuhrio ("Nobuhrio") are alleged to be agents or brokers

licensed by the state of California and doing business in Fresno County on behalf of State Farm. Plaintiffs are citizens and residents of California.

Defendants removed the action to this court on June 18, 1992. They contend that federal diversity jurisdiction exists on the basis that plaintiffs improperly joined Zeleny and Nobuhrio as a sham, in bad faith, and in an attempt to prevent the removal of this action to federal court. Defendants now move the court to: (1) drop the individual defendants; (2) dismiss the individual defendants, the bad faith claim, and the claims for punitive damages; and (3) strike allegations of punitive damages. Defendants also seek judicial notice of a prior order of this court.

The court has jurisdiction to determine if its jurisdiction is defeated by the mention of two California residents, Zeleny and Nobuhrio, in the complaint. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II. *Judicial Notice*

■ Pursuant to FRE 201, judicial notice may be taken of adjudicative facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known or capable of accurate and ready determination by resort to sources the accuracy of which cannot reasonably be questioned.

Defendants request that judicial notice be taken of the court's March 20, 1986, Decision and Order in *Pontius v. Truitt et al.*, CV–F–85–463–REC. The court's order in *Pontius* is not an adjudicative fact of which judicial notice can be taken. Accordingly, defendants' request is denied.

## III. *Motion [1] to Drop the Individual Defendants*

■ "[A] defendant may remove a civil action on the basis of diversity jurisdiction and seek to persuade the district court that any non-diverse defendants were fraudulent-ly joined. A non-diverse defendant is fraudulently joined[ ] if it can be shown that no cause of action has been alleged by the plaintiff and the plaintiff's failure is obvious under settled state law." *Zogbi v. Federated Dept. Store,* 767 F.Supp. 1037, 1041 (C.D.Cal.1991) citing *McCabe,* 811 F.2d at 1339.

The complaint contains the following allegations regarding defendants Zeleny and Nobuhrio:

### GENERAL ALLEGATIONS

. . . .

2. Plaintiffs are informed and believe and allege that at all times mentioned herein defendants, HOWARD W. ZELENY and RANDY NOBUHRIO, were insurance agents or insurance brokers or both licensed by the State of California and as such are authorized to transact insurance both for and on behalf of defendant, STATE FARM INSURANCE COMPANY, and for and on behalf of plaintiffs and were doing business in the State of California and the County of Fresno.[2]

. . . .

6. ... In approximately June of 1985, plaintiffs requested their then agent and/or broker defendant, HOWARD W. ZELENY, to raise the limits of their insurance $1,000,000.00 across the board. Defendant, HOWARD W. ZELENY, agreed to do this gradually indicating the plaintiff that if he raised their limits across the board immediately to $1,000,000.00 it would raise too many red flags and the company might not agree to it. In July of 1985, plaintiffs' liability bodily injury limits were raised to $500,000.00 each person/$500,000.00 each accident, but plaintiffs' uninsured motor vehicle coverage remained at $30,000.00 each person/$60,000.00 each accident ...

7. On April 1, 1989, the policy on the 1977 Chevrolet pick-up truck ... renewed for the period April 1, 1989 to October 1, 1989. At that time, defendants, RANDY NO-

---

1. Defendants' motions all cite to certain exhibits which are said to have been attached to the complaint. The complaint also references attached exhibits. No exhibits are attached to the complaint in the file.

2. In the removal petition defendants clarify that Zeleny and Nobuhrio were employees and agents of State Farm, not brokers.

BUHRIO, was plaintiffs' insurance agent and/or broker.... The liability limits for bodily injury remained at $500,000.00/500,000.00 and the uninsured motor vehicle bodily injury limits remained at $30,000.00/60,000.00.

....

*FIRST CAUSE OF ACTION*[3]
(*Negligence*)

....

11. At all times mentioned herein, defendants, HOWARD W. ZELENY and RANDY NOBUHRIO, were plaintiffs' insurance agent and/or brokers and as such had an obligation to obtain insurance coverage from defendants, STATE FARM INSURANCE COMPANY, requested by plaintiffs and had a continuing obligation to review and update those coverage periodically with plaintiffs to ensure that both the type of coverage and the limits of coverage in force were adequate and were what plaintiffs had requested.

....

13. Defendants, and each of them breached such duties and obligations and negligently failed to obtain the coverage and limits requested by plaintiffs and negligently failed to ... update those coverage periodically to ensure that said coverage and limits were adequate and were the coverage and limits that plaintiffs had requested.

14. As a proximate result of the negligence of defendants and each of them, plaintiffs have now been damaged because of an inadequate limit[ ] on their uninsured motorist liability coverage, which will result in plaintiffs failing to recover adequate benefits for the accident of plaintiff ...

*SECOND CAUSE OF ACTION*
(*Negligent Misrepresentation*)

....

16. Defendants and each of them negligently misrepresented to plaintiffs that their insurance limits would be raised across the board so that their uninsured motorist coverage would be raised along with their automobile liability coverage so that the limits of both would be identical.

17. As a proximate result of the negligence of defendants and each of them, plaintiffs have now been damaged because of an inadequate limit[ ] on their uninsured motorist liability coverage, which will result in plaintiffs failing to recover adequate benefits for the accident of plaintiff ...

Based on the foregoing, defendants (1) contend that plaintiffs fraudulently joined Zeleny and Nobuhrio because the allegations against them do not state a cause of action; (2) assert that Federal Rules of Civil Procedure 20[4] and 21[5] give the court authority to drop Zeleny and Nobuhrio as misjoined; and (3) argue that, pursuant to *Lewis v. Time, Inc.,* 83 F.R.D. 455 (E.D.Cal.1979) *aff'd* 710 F.2d 549, such authority should be exercised.

While *Lewis* is helpful[6], the Ninth Circuit's subsequent decision in *McCabe* is con-

---

3. The general allegations are re-alleged in each of the following causes of action.

4. Rule 20(a) provides,
[a]ll persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A ... defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given ... against one or more defendants according to their respective liabilities.

5. FRCP 21 provides,
[m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

6. The *Lewis* court reasoned,
[t]he joinder of a nondiverse defendant, although fair on its face, may be shown by a petition for removal to be only a fraudulent device to prevent removal. Under such circumstances, the court may disregard the joinder and retain jurisdiction ... "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and ... there [is] no colorable ground for so claiming."

trolling. As noted above, *McCabe* instructs that a non-diverse defendant is fraudulently joined if it can be shown that no cause of action has been alleged by the plaintiff and the plaintiff's failure is obvious under settled state law. In California it is settled law that an agent acting within the course and scope of his employment cannot be held liable for damages resulting from a negligent failure to insure.

> While an insurance agent may be personally liable to the insured for damages which are the result of the agent's negligent failure to insure property as contracted, the agent's personal liability is dependent upon the extent of the disclosure of his agency. The rule is correctly stated in Corpus Juris Secundum: "[L]iability to the ... insured for acts or contracts of an insurance agent within the scope of his agency, with a full disclosure to the principal, rests on the company, ..." This requirement was upheld in *Gibbs v. Home Ins. Co. of New York* [252 A.D. 805, 298 N.Y.S. 856] The plaintiff sought a judgment reforming an insurance policy issued by the insurance company, and in the alternative, damages against the agent for negligently failing to provide an adequate insurance policy. The court held: "Where an agent is duly constituted and names his principal and contracts in his name and does not exceed his authority, the principal is responsible and not the agent."
>
> This view has been adopted in California.

*Lippert v. Bailey,* 241 Cal.App.2d 376, 382, 50 Cal.Rptr. 478 (1966) (citations omitted). See also Cal.Labor Code § 2802 which requires an employer to defend and/or indemnify an employee who is sued by a third party for conduct occurring in the course and scope of employment.

While normally in a removal action the District Court must take the plaintiff's pleadings as it finds them, a different approach is utilized when a colorable claim of fraudulent joinder is raised.

"While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal."

Plaintiffs assert that Zeleny and Nobuhrio were not joined as a fraudulent device to prevent removal. Nonetheless, given *Lippert,* § 2802, and in reliance on State Farm's express agreement to accept responsibility for the acts of Zeleny and Nobuhrio regardless of whether their acts were within or beyond the course and scope of employment, the court orders that Zeleny and Nobuhrio be dropped from this matter on the ground that they were fraudulently joined as defendants.

## IV. *Motion to Dismiss*

### A. The Individual Defendants

Given the court's determination that Zeleny and Nobuhrio must be dropped as fraudulently joined, the motion to dismiss, insofar as it relates to them, is denied as moot.

### B. The Bad Faith Claim

■ Plaintiffs' bad faith claim incorporates the general allegations of the complaint and specifically alleges,

> 28. When plaintiffs presented their underinsurance claim, defendant, STATE FARM INSURANCE COMPANY, took the position that there was only an additional $15,000.00 in uninsured motorist benefits available in an attempt by defendant, STATE FARM INSURANCE COMPANY, to avoid further payment on plaintiffs' underinsurance claim. Defendant, STATE FARM INSURANCE COMPANY, further requested that it be allowed to take a statement from plaintiffs concerning the facts and circumstances surrounding plaintiffs' request for higher uninsured motorist limits, which was done on November 19, 1991, and to date defendant, STATE

The court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."

Of course, as in any removal action, doubt arising from merely inartful, ambiguous or technically defective pleadings should be resolved in favor of remand. Additionally, ordinarily a fraudulent joinder claim must be capable of summary determination.

*Id.* at 460 (citations omitted).

FARM INSURANCE COMPANY, has neither accepted or rejected plaintiffs' claim for higher limits, but their silence is tantamount to a rejection.[7] Defendant has adopted a stonewall position without probable cause and without sufficient belief that plaintiffs' uninsured motorist limits should not be treated as matching their liability limits of $500,000.00 per person/$500,000.00 per accident.

29. As a proximate result of the tortious denial of the existence of higher uninsured motorist limits under plaintiffs' automobile liability policy, by defendant, STATE FARM INSURANCE COMPANY, plaintiffs have been damaged as a result of being woefully underinsured for the loss they sustained on September 7, 1989, and have been damaged in an amount not yet determined.

30. The aforementioned acts of defendant, STATE FARM INSURANCE COMPANY, were willful and unreasonable and are fraudulent, oppressive and malicious in nature and plaintiffs are therefore entitled to recover punitive damages against defendant, STATE FARM INSURANCE COMPANY.

■ The implied covenant of good faith and fair dealing imposes a duty upon an insurer to not *unreasonably* withhold payments due under a policy. *Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990). The *Love* court determined,

> there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause.[10]
>
> . . . .
>
> Our conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted. The covenant of good faith and fair dealing is implied in law to assure that a contract-

ing party "refrain[s] from doing anything to injure the right of the other to receive the benefits of the agreement. In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it frustrates the insured's *primary* right to receive the benefits of his contract—i.e., prompt compensation for losses. Absent that primary right, however, the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings.

---

10 Our interpretation that a plaintiff must show, at a minimum benefits were delayed or withheld, accords with the analysis of the commentators: "Where benefits are *fully and promptly paid,* no action lies for breach of the implied covenant ... *I.e., absent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant.*"

*Id.* at 1151, 1153, 271 Cal.Rptr. 246 (citations omitted).

Defendants argue that the *Love* test has not been met. First, because plaintiffs have not alleged a breach of contract cause of action, defendants assert that, following *Love,* plaintiffs cannot maintain a claim for bad faith denial of benefits. Second, because State Farm offered plaintiffs all remaining benefits under the written policy, defendants assert that, as a matter of law, State Farm's denial of additional benefits not provided for in the written policy cannot be held unreasonable. Defendants also note that from July 1985 when plaintiffs allegedly requested the coverage increase to the time of Arlen Gasnik's accident in 1989, the plaintiffs were

---

7. State Farm denied plaintiffs' claim for higher uninsured motorist limits on the same date that plaintiffs' action was filed.

sent, at six month intervals, a total of eight insurance renewal notices.[8] Each notice reflected uninsured motorist policy limits of $30,000/$60,000. Consequently defendants argue that the complaint has set forth no theory that State Farm had no reasonable basis for only paying the policy limits as written. Defendants submit that, to the contrary, the complaint, as a matter of law, demonstrates that its reliance on the notices and the policy was reasonable.

Plaintiffs respond to this motion by arguing the facts. Plaintiffs' legal arguments, all of which are made without citation, include the contentions that the mere fact that the case has been filed is prima facie evidence that there has been a bad faith denial of benefits, and that there is an industry-wide practice of obtaining a written waiver if an insured opts to maintain a lower limit on his or her uninsured motorist coverage than the limit on his or her bodily injury liability limit.

In a motion to dismiss the court must accept as true all material allegations of the complaint. One such material allegation is that plaintiffs requested a limit increase in their uninsured motorist coverage. Another is that State Farm failed to provide the requested coverage. However, it does not necessarily follow from these allegations that State Farm's decision not to provide benefits beyond those due pursuant to the written policy was bad faith.

The complaint states that State Farm offered to pay the $15,000 due under the written policy. This admission contradicts the allegation of bad faith because it shows plaintiffs cannot prove that benefits have been withheld under the policy as written. Moreover, insofar as plaintiffs may argue that regardless of State Farm's offer to provide benefits as per the policy, they were nonetheless denied the full benefits due them as per the *requested* coverage, they cannot prove that the withholding of such additional benefits was unreasonable. Plaintiffs renewed the policy at least eight times but failed to ever notify State Farm that the uninsured motorist coverage was not written as requested. Plaintiffs also admit that the poli-

cy, as written, contained uninsured motorist coverage to a limit of $30,000/$60,000. Cmplt. 3:25–27; 7:16–18. Furthermore, plaintiffs have cited no authority for the propositions that State Farm's failure to periodically review their policies or to obtain a waiver regarding their comparatively lower insured/underinsured motorist coverage constitutes bad faith. Consequently, the court finds that plaintiffs have failed to state a bad faith claim. Accordingly, this claim is dismissed.

### C. The Claims for Punitive Damages

■ In their prayer for relief plaintiffs seek punitive damages with regard to their first (negligence), second (negligent misrepresentation), and fourth (bad faith) causes of action. Given the court's decision to dismiss plaintiffs' bad faith claim it follows that their accompanying claim for punitive damages must also be dismissed. Furthermore, because no allegations whatsoever supporting a punitive damages claim are found within the first and second causes of action, and because the general rule is that punitive damages can not be recovered on negligence claims, the motion is granted as to these causes of action as well.

### V. *Motion to Strike*

Defendants' motion to strike plaintiffs' punitive damages claims is duplicative of their motion to dismiss the punitive damages claims. Given the court's determination that the punitive damages claims must be dismissed, this motion denied as moot.

ACCORDINGLY, IT IS ORDERED that defendants' motions to drop the individual defendants and to dismiss the bad faith and punitive damages claims are granted. IT IS FURTHER ORDERED that defendants' motion for judicial notice is denied, and that the remainder of defendants' motion are denied as moot. IT IS FURTHER ORDERED that the Doe defendants are dis-

8. Plaintiffs agree that the policy was renewed every six months or approximately eight times

between the date of the requested increase and the date of the accident.

missed as improperly pleaded in a federal action.