Christopher O'KEEFE, and Joni O'Keefe, Plaintiffs,

v.

**ALLSTATE INDEMNITY COMPANY, Defendant.**

**Case No. 3:13–CV–00744–JM–JMA.**

United States District Court, S.D. California.

July 15, 2013.

Patrick M. Howe, San Diego, CA, for Plaintiffs.

Peter H. Klee, Jessica L. MacKaness, McKenna Long & Aldridge LLP, San Diego, CA, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, WITH LEAVE TO AMEND

JEFFREY T. MILLER, District Judge.

On March 28, 2013, Plaintiffs Christopher and Joni O'Keefe commenced this diversity action by filing a complaint against Defendant Allstate Indemnity Company ("Allstate"). Plaintiffs alleged three causes of action: (1) breach of the insurance contract at issue, (2) breach of the implied covenant of good faith and fair dealing, and (3) negligent misrepresentation. On April 18, 2013, Defendant moved

to dismiss the second cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the court GRANTS Defendant's motion to dismiss with leave to amend.

## I. BACKGROUND

Prior to November 27, 2010, Christopher O'Keefe sustained serious injuries in two car accidents. Compl. ¶ 15. As a result, the Department of Motor Vehicles (DMV) suspended Christopher's driver's license. *Id.* For the next three to four years, Christopher relied on his wife, Joni, or others for all vehicle transportation. *Id.* ¶ 16.

In the fall of 2010, Christopher's treating neurologist told Christopher that his medical condition was such that he could begin driving again. *Id.* ¶ 17. Accordingly, Christopher and Joni purchased a new Mini Cooper. *Id.* ¶ 18. The two intended that the Mini Cooper be Christopher's primary vehicle but, because Christopher's license was still suspended, Joni purchased the car in her name. *Id.*

Christopher and Joni also applied for and purchased auto insurance for the new car. *Id.* ¶ 19. On December 14, 2010, Christopher and Joni met with Allstate agent Mallory Lee to discuss Christopher's medical condition, his suspended driver's license, and his plans to complete any DMV-required assessments to lift the suspension. *Id.* ¶¶ 20, 24, 25. Once lifted, Christopher and Joni wanted Christopher to be the primary driver of the new vehicle. *Id.* ¶ 26. Lee told Christopher and Joni that the insurance policy would list Christopher as an "excluded" driver, but that Lee could add Christopher as the primary driver as soon as the license was reinstated. *Id.* ¶¶ 27, 28. Lee stated the same in the "Agent Remarks" section of the application. *Id.* ¶ 29.

Christopher successfully completed the DMV-required assessments on February 16, 2011. *Id.* ¶ 35. Upon passing, Christopher twice called Lee's office to inform her of the lifted suspension, but Lee was unavailable for both calls. *Id.* ¶¶ 38, 39. On each occasion, Christopher spoke with Allstate agent Matthew Bevan. *Id.* ¶ 40. Christopher told Bevan that the DMV had reinstated his license and that he wanted Allstate to adjust his status from "excluded" to "primary driver." *Id.* ¶ 42. Bevan allegedly responded that Christopher was "good to go." *Id.* ¶ 44. Christopher understood that he was no longer excluded from the policy, and that Bevan had added Christopher as the primary driver. *Id.* Bevan did not request additional information or documentation, nor did he advise Christopher not to drive the Mini Cooper. *Id.* ¶¶ 45, 46.

On February 24, 2011, Christopher drove the Mini Cooper. *Id.* ¶ 48. While driving, Christopher crashed the car, causing complete and total damage. *Id.* ¶¶ 49, 50. After the accident, Christopher called Lee to report the loss. *Id.* ¶ 51. Lee acknowledged Christopher's previous conversations with Bevan and, for purposes of the claim, requested a DMV license history report verifying the reinstated status of Christopher's license. *Id.* ¶¶ 52, 53.

Christopher obtained the report the next day, which confirmed that his driver's license was active and not suspended as of February 24, 2011. *Id.* ¶¶ 54, 55. Lee agreed to provide the report to Allstate's underwriting department and to ask the department to apply the information to Christopher and Joni's policy effective before the accident. *Id.* ¶ 56.

On March 31, 2011, Allstate denied Christopher and Joni's insurance claim, noting that coverage was unavailable because Christopher was an excluded driver at the time of the accident. *Id.* ¶¶ 63, 64.

Christopher and Joni responded to the denial with a letter indicating the previous conversations with Lee and Bevan, and enclosed the DMV license history report therein. *Id.* ¶¶ 65, 66, 67, 68.

On June 9, 2011, Allstate again denied coverage. *Id.* ¶ 70. Allstate based the denial in part on the license history report's failure to indicate the time at which it was signed by the DMV official. *Id.* ¶ 71. Presumably, Allstate could not clearly determine whether the DMV reinstated the license before or after the time of the accident without a time stamp on the report. Allstate also explained that, for coverage to apply, Christopher and Joni needed to provide Allstate with the report before the accident, although no such requirement was disclosed in the policy or communicated to Christopher and Joni. *Id.* ¶ 72. In response, the O'Keefes sued for damages claiming (1) breach of the insurance contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) negligent misrepresentation.

Allstate then moved to dismiss the second cause of action. Def's MTD at 1. Allstate asserts that breach of the implied covenant applies only when the insurer withholds benefits due under the written terms of the policy. Mem. Of P. & A. in Supp. of Def's MTD at 1. Because the insurance policy listed Christopher as an excluded driver at the time of the accident, Allstate's denial complies with the policy terms as written. *Id.* Therefore, Allstate claims that, as a matter of law, the O'Keefes cannot sue Allstate for bad faith, even if Allstate engaged in misconduct that would justify reformation of the insurance contract to match the oral promises made by its agents. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary"

cases. *U.S. v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (the complaint's allegations must "plausibly suggest[ ]" that the pleader is entitled to relief); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991). The courts may, however, consider material properly submitted as part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner and Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. *Concha v. London,* 62 F.3d 1493, 1500 (9th Cir.1995), cert. dismissed, 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to

be drawn from them. *Holden v. Hagopian*, 978 F.2d 1115, 1118 (9th Cir.1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir.1996).

## III. DISCUSSION

The sole issue presented is whether Plaintiffs have set forth a viable claim for breach of the implied covenant of good faith and fair dealing.

### A. The Implied Covenant Of Good Faith And Fair Dealing

To establish breach of the implied covenant, the insured must show that: (1) benefits due under the policy were withheld, and (2) such withholding was unreasonable. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246 (1990).

Importantly, breach of the implied covenant is not established "without first establishing that coverage exists." *California State Auto. Ass'n Inter-Ins. Bureau v. Super. Ct.*, 184 Cal.App.3d 1428, 1433, 229 Cal.Rptr. 409 (1986). Benefits are due under an insurance policy when so defined under the express terms of the contract as written. *Gasnik v. State Farm Ins. Co.*, 825 F.Supp. 245, 251 (1992). The implied covenant only supplements the policy's express provisions, *Love*, 221 Cal. App.3d at 1153, 271 Cal.Rptr. 246, and cannot "impose substantive duties or limits on the contractual parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 350, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000).

Withholding of benefits is unreasonable when done in bad faith or without proper cause. *Love*, 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246. Where benefits are withheld for proper cause, such as lack of coverage under the policy, there is no breach of the implied covenant. *Id.* (citing *California Shoppers Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985)).

In *Gasnik*, a State Farm insurance policy provided the Gasniks with $30,000 of uninsured motorist coverage. *Gasnik*, 825 F.Supp. at 246. When Arlene Gasnik injured herself in an accident, State Farm offered the policy limit. *Id.* The Gasniks sued for bad faith, claiming that a State Farm agent had failed to obtain the requested $1,000,000 in coverage. *Id.* at 248. The Gasniks further alleged that the agent materially misrepresented the policy, which misled them into believing that the policy provided more coverage than it actually did. *Id.*

The court held that while the Gasniks could pursue a reformation claim based on the agent's alleged misconduct, they could not sue for bad faith without proving that benefits were withheld under the policy "as written." *Id.* at 251; *R & B Auto Ctr., Inc. v. Farmers Group, Inc.*, 140 Cal. App.4th 327, 353, 44 Cal.Rptr.3d 426 (2006).

In *R & B*, used car dealership R & B Auto Center, Inc. purchased lemon law insurance from Farmers. *R & B*, 140 Cal.App.4th at 332, 44 Cal.Rptr.3d 426. When sued under the lemon law, R & B discovered that the insurance coverage specifically excluded used cars and applied only to the sale of new cars. *Id.* The dealership sued Farmers for bad faith, claiming that Farmers deliberately marketed and sold the lemon law coverage without disclosing that the coverage was inapplicable to their used car operations. *Id.*

As in *Gasnik*, the court held that without coverage under the policy R & B had

no cause of action for bad faith. *Id.* at 353, 44 Cal.Rptr.3d 426. The court also held that bad faith could not be applied retroactively, observing that even if Farmers' alleged misconduct might allow for contract reformation and retroactive coverage, Farmers could "not be held liable for bad faith for failing to have the foresight to know that the policy would be reformed." *Id.* at 354, 44 Cal.Rptr.3d 426. Accordingly, the court dismissed the bad faith claim. *Id.* at 354, 44 Cal.Rptr.3d 426.

### B. Allstate Did Not Withhold Benefits Due Under The Policy Because Christopher's "Excluded" Status Precluded Coverage

Here, as in *Gasnik*, Allstate denied coverage beyond that afforded under the written terms of the policy. At the time of the accident, Christopher's "excluded" status precluded policy coverage. Because the O'Keefes cannot sue for bad faith without proving that benefits were withheld under the policy "as written," and because the O'Keefes cannot establish that coverage existed under the express terms of the contract, there is no cause of action for breach of the implied covenant of good faith and fair dealing.

Even if Allstate agents Lee and Bevan represented that coverage extended to Christopher or promised to modify the terms of the contract to provide such coverage, the implied covenant would still be limited to assuring compliance with the express terms of the agreement, and "[could not] be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't. of Parks & Recreation*, 11 Cal.App.4th 1026, 1032, 14 Cal.Rptr.2d 335 (1992). Thus, as a matter of law, the Court cannot find Allstate liable for bad faith for denying a claim where, at the time of the loss, the written terms of the policy excluded coverage. As decided in *Gasnik*, this is true regardless of whether Allstate engaged in conduct that modified its contractual obligations.

### C. An Oral Binder May Not Serve As The Basis For Retroactive Application Of The Implied Covenant Of Good Faith And Fair Dealing

An insurance agent "may bind the company by any acts, agreements[,] or representations that are within the ordinary scope and limits of the insurance business entrusted to him." *Cronin v. Coyle*, 6 Cal.App.2d 205, 213, 44 P.2d 385 (1935). This is true even if the agent's acts are in violation of private instructions or restrictions upon his authority. *Id.* Agents "may enter into binding parol contracts to issue new policies, to renew existing policies[,] or to transfer existing insurance from one location to another." *Parlier Fruit Co. v. Fireman's Fund Ins. Co.*, 151 Cal.App.2d 6, 19, 311 P.2d 62 (1957); *Skyways Aircraft Ferrying Serv., Inc. v. Stanton*, 242 Cal.App.2d 272, 281, 51 Cal.Rptr. 352 (1966).

Plaintiffs heavily rely on *Skyways* to buttress their argument that breach of the implied covenant is properly pled in their complaint. At the threshold, it is important to note that *Skyways* was not an implied covenant case and stands only for the proposition that an insurance company may be orally bound for coverage on contract or warranty theories.

Skyways, a transoceanic airplane delivery service, sought to renew the expiring life insurance policy of its president, Jack Ford. *Skyways*, 242 Cal.App.2d at 275, 51 Cal.Rptr. 352. On August 31, Skyways asked a Lloyd's insurance agent to extend the policy beyond the August 31 expiration to cover Ford's September 1 delivery. *Id.* at 276, 51 Cal.Rptr. 352. After a detailed phone conversation, the agent agreed to

match the terms and rates of Ford's current policy, effective immediately. *Id.* at 278, 51 Cal.Rptr. 352. Ford died on the delivery flight the next day. *Id.* at 276, 51 Cal.Rptr. 352. Lloyd's denied the claim based on the agent's lack of authority to orally bind coverage. *Id.* at 283, 51 Cal. Rptr. 352.

The court held that the agent had sufficient authority to bind coverage and, therefore, that Lloyd's had entered into a binding insurance contract. *Id.* at 280, 51 Cal.Rptr. 352. The court based its decision on many factors, including: the detailed nature of the conversation; the unambiguous nature of the policy; the agent's extensive aviation background; his twenty years of experience in the field; his specific familiarity with Ford; his general familiarity with the policy; and his express powers to orally bind. *Id.* at 277–78, 51 Cal.Rptr. 352. *Skyways* does not assist Plaintiffs with their implied covenant claim.

Plaintiffs attempt to make much of Bevan's alleged statement that Christopher was "good to go" after Christopher reported that the DMV had reinstated his license. At most, however, the "good to go" reference buttresses the breach of contract and misrepresentation claims. It does not serve as a basis for an implied covenant claim for the reasons discussed above. Indeed, the "good to go" reference without more falls leagues short of the indicia of oral binders cited by the court in *Skyways,* but the breach of contract claim remains unchallenged by Allstate at this juncture.

In sum, while an oral binder may form the basis for contract reformation and retroactive coverage, it does not, on its own, establish bad faith and, even if it constitutes an oral promise, it does not open the door for retroactive application of the implied covenant. This remains true regardless of whether the promise ultimately binds the insurer.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss the second claim for breach of the implied covenant of good faith and fair dealing is GRANTED with leave to amend. The O'Keefes have until July 31, 2013 to submit a fully integrated first amended complaint if they so desire.

**IT IS SO ORDERED.**